The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Good morning. Please be seated. We are ready for argument in our first case. Ms. Platt. Good morning, Your Honors, and may it please the Court. Caroline Platt on behalf of Donald Hill. The traffic stop in this case was illegal because the police officers collectively took longer than reasonably required to complete the legitimate incidents of the traffic stop. The standard from this Court's decisions, such as DiGiovanni or Guion-Ortiz, is that they must diligently pursue the activities that caused the traffic stop, in this case, driving on a suspended license and reckless driving by the driver, my client being the passenger in the vehicle. In particular, the stop in this case was prolonged because of two decisions that the police officers made. The first was that Officer Taylor, who is the officer in the car, or who went back to the police car, took the time to summit a canine unit, which happened, as we know from the record, at 6.04 p.m. The traffic stop began at 6.01. Before he called for the dog, Officer Taylor testified that he already had the information he needed to write the summons to the driver of the car. He got that information from the DMV record check, and he did that before he called for the dog, which again was at 6.04. And so at that point, they called for the dog, and Officer Taylor clearly testified that he stopped writing the summons both to call for the dog, and again after he called for the dog. So he started, he stopped, he started again. He stopped again to use another computer system, which is, I think, local to Richmond, called PISTL. Could you explain that, please, briefly? Exactly what is PISTL, and who pays for it? Okay, so I was curious about this myself, Your Honor, and there's a very small amount of information about PISTL in the record, and I may have done a little research on the side, but I'm not sure I should tell the court about that. In the record, what the officer said is that PISTL is, I believe, a Richmond, or at least Virginia-based system, so it's local. It's not a national system like NCIC. And again, NCIC revealed warrants, or in fact, in this case, did not reveal warrants, but was a warrant check that returns no warrants on either occupant of the car. PISTL says that it's all interactions with the police. And so I think it's, I think, traffic stops. It's not just arrests or convictions. I think it's kind of anything the local police, I don't want to say too much, because it's not in the record, but whatever the local police enter into it. And so it's not like NCIC, which comes back with convictions and warrants and is a national sort of background check system. Well, was it PISTL that came back with the information, likely armed? No, Your Honor. That was from NCIC, which was the previous check. And I think that that information can only come from the prior conviction records of both the driver and my client, Mr. Hill. So I would say that that information is sort of duplicative of, has previous convictions for guns and or drugs. That particular information is. The information with respect to probably armed? Came from NCIC, Your Honor. No, I was trying to ascertain what you were suggesting was duplicative. I think my understanding is that information would come from previous convictions. The information, specifically the information about being armed? Yes, and I would say probably associated with drugs or likely drug, I think it's user or seller was the language. I think all of that could only come from the police knowing about their prior convictions. And I mean in the computer system, whoever entered that information, which again, Your Honor, is not in the record where that comes from. I'm sorry. Please go ahead. And so your argument is that the police infamously prolonged the stop by engaging in an additional computer search? That's part of my argument, Your Honor. I think that in this case, again, Officer Taylor had what he needed to write the summons. So our position. I'm sorry. Before you move on, just to finish on pistol, I'm a little surprised, perhaps I shouldn't be, that you don't know everything there is to know about pistol because I would have thought that as a part of the discovery in the case, you would have been given everything there is to know about pistol. And how can you not have that? To my knowledge, our office has not been given that information, Your Honor. Have you asked for it? I don't know the answer to that, Your Honor. I guess that's why it won't happen. I didn't litigate this case in the district court, Your Honor. I'm an appellate attorney. And the person who did is on leave from our office in Africa training public defenders. So he's not in our office at the moment. So I apologize, Your Honor. But I think, too, that the information from pistol and also these likely armed or drug sort of notations in these NCIC database, those all go to reasonable suspicion, which Judge Payne did not hold that there was reasonable suspicion to prolong the search in this case. So to go back to Judge Duncan's question, we argue that the search was prolonged because before 6-04, Officer Taylor had what he needed. And taking him at his word that he could have written summons in 10 minutes, so the summons should have been written here by 6-14. Instead, it's 6-21 when the K-9 unit arrives, and he is about finished or almost finished after that. When did he learn about the gun? When did Officer McClendon learn about the gun? He learned about the gun shortly after the K-9 unit arrived is what Officer McClendon and Officer Taylor both testified. So at the earliest, 6-21, probably more like 6-22, 6-23. And so that's more than 15 minutes after Taylor could have started writing the summons. So he decides to use this other local computer system, PISTOL. He has what he needs, including a warrant and a background check from NCIC. So at that point, if they really wanted to use PISTOL, McClendon could have done that. I'm having a little trouble putting my finger on what was objectionable. The fact that he decided to conduct an additional computer check of some kind, the fact that they divided up the tasks. All of the above, Your Honor. But that just seems to go to the fact that it could have been done, that it could possibly have been done more quickly. And that gets me back to the standard, Your Honor, from DiGiovanni and Guion-Ortiz, which is diligently pursue. Our argument is that the police officers together were not diligently pursuing. No, you're talking about most time efficiently or perhaps more efficiently. The language in Rodriguez is, you know, or the time reasonably required. And your standard in this court is diligently pursue the traffic stop. And so the decision of the officers to check this extra database and also to have, if they really wanted to do that, Officer McClendon could have done it. The papers, the tickets were written on paper. So McClendon could have used the computer while Taylor wrote the summons. But you've got a situation where there are two people and two defendants, or two, a passenger and a driver, put it that way, who have been stopped. And the officers are supposed to leave them unattended in order to conduct a check. You know, that would pretty much revolutionize law enforcement, wouldn't it? Law enforcement practices and procedures and safety to turn your back on somebody without knowing whether – and the driver had, in fact, alighted from the vehicle already and had to be told to get back in, right? So why would you want to turn your back on them? So the evidence showed, Your Honor, first of all, neither officer testified that the way they did things was for officer safety. That is not in the record. Yeah, but just think of common sense. And so Officer McClendon, in fact, testified that he stayed at the car to pursue an investigation to gain reasonable suspicion. Okay, but just common sense. Why would you have – what I'm worried about is writing the opinion that we're going to write in this case. And it sounds to me like you want us to say that if they're two officers, they both have to be engaged in pursuing the writing of the summons. In order to be diligent, both of them have to be doing that rather than attending to other matters at another part of the investigation. Your Honor, if – well, first of all, if there had been reasonable suspicion about the occupants of the car, then they're allowed to delay the stop anyway, right? And so in this case, there is no reasonable suspicion. Stop. Sorry, ma'am. The question, as I understood it in mine, is what are you saying? Are you saying that – what would you have us say? That the officer couldn't engage in an additional computerized inquiry? That the officers couldn't divide up responsibilities in the way they did? What are you saying? And I understood this to be part of Judge Keenan's question, and it's mine as well. What is the guidance you would have us give? I think, Your Honor, that the legal standard that this court should base or could base its opinion on is – Could you answer – just specifically, directly answer my question. The legal standard is diligently pursue. And in this case – But in this case – The officers did not diligently pursue because they called for the dog and they delayed after that by using the second system and by having the clandestine – But what was wrong with using the second system and dividing up – What are you saying we would tell two officer units to do? Would you have us direct how they conduct any ensuing inquiry? Would you say that they are not allowed to use another computerized system? Would you say that they are not allowed to divide responsibilities so that one person remains with the occupants of the car and another person does computer-driven reviews? Specifically, what was impermissible about what was done? Specifically, in this case, Your Honor, there was no reasonable suspicion, which, again, just may pound. And so all of the police officers who are present, including Taylor and McClendon, must pursue the incidence of the traffic stop. And yes, so in this case, they didn't need to use PISTOL. And if they wanted to use PISTOL, it shouldn't have ceased the writing of the ticket. It was because they ceased writing the traffic summons for many minutes in the middle of the stop. That violated the rule of Rodriguez and DiGiovanni. It was the ceasing of the pursuit of the traffic summons writing. Okay, now what about the fact – nobody's talked about Virginia Code Section 46.2940 and the fact that the officer has to do something when you have a vehicle with a driver with a suspended license. And the officer has to make an assessment whether that person, in fact, can be released on the summons. And here the officer had started writing the summons, but they didn't really know whether he could be released on summons until they had gotten this basket of information concerning their background. Because the statute, the Virginia Code, says that if somebody is likely to disregard a summons, then you bring him before the magistrate. That's us to the driver, Your Honor? I'm just asking. Okay. Yeah. And so this – and that's why I'm curious this has never been discussed in this case. And as an old traffic court judge. I understand. You have to just – the officers have to decide what they're going to be doing with the car. And that extends the time, too. It would, although I don't believe that came up in this case, Your Honor. The only factual thing in this case that I think might address that – and again, this has not been something that I've discussed before – the car was not on the street at this point. The car was in Mrs. Morgan's driveway. So she had already come out. She told the police she knew them. They come to visit her. Right, but the police still have to do something with the car. Well, they could have asked Mrs. Morgan to leave it there. I mean, this is the thing. It wasn't illegally parked. It wasn't halting traffic. It was on private property of someone who knew the driver. Right, but I'm saying that under the Virginia Code, something has to be done with that automobile. Your Honor, again, this is not something the government has ever brought up, so I would – if you wanted to ask for supplemental briefing or something, I'd be happy to look into that. No, that's fine. I was just curious why this – that neither side mentioned it. Because it's something every traffic stop for a suspended license is part of the equation. Well, I think if they found something in the car, this sort of reminds me of like an inventory search, you know, what are you going to do with the car. But, you know, because there was no – No, it's what do you do with the car because the driver cannot drive as a matter of law. Yeah, I think in this case the only thing I can say is that Mrs. – it was on Mrs. Morgan's property and she knew the driver, so it's not – it's not a stranger and it's not – certainly not blocking public street or a parking lot or that kind of thing. So to try to address Judge Duncan's question and your search, Keenan, in this case it was because Officer Taylor stopped entirely writing the traffic summons that he was no longer diligently pursuing the incidents of the traffic stop. And at that point, again, they'd already done a warrant check, they'd already done a background check. So at this point they're waiting for – I think it's a fair assumption to say they're waiting for the canine. And that's why he's, you know, taking his time and he's using this other system and he's not writing the summons. He has ceased. See, what does Rodriguez mean when it says a de minimis delay is unacceptable? I think in this – Again, how would you write the opinion? Again, I would say that had Officer Taylor diligently been writing the traffic summons for the entire 20 minutes of this stop, then that would be fine. But that's – he testified that he stopped multiple times with that to pursue these other inquiries while Officer McClendon himself entirely and solely engaged on investigatory missions that, again, he did not say had anything to do with officer safety, which I think would be a different case. But in that case, again, I think if you have these officer safety concerns in the record, which not to be repetitive, we do not, in that case you'd be more likely to have reasonable articulable suspicion, in which case the traffic stop can be extended anyway, which is just not what we have in this case, as Judge Payne recognized by not ruling in that manner despite the government's invitation to do so. I just can't picture that a court would put police officers in a situation where we're going to try to micromanage and say that officers can't make a determination that one officer can't stay with the suspects. I think, Your Honor, if you look at a case like DiGiovanni, in that case I think it was on 995 in Maryland, there's only one officer and there is only one guy. So in a case like that, officers leave people alone in the cars all the time. In this case, and I'm not saying to be clear that the police have to have X number of officers or even that it's X number of minutes, and this is the existing standard, as you know, de minimis is not okay and the police officers have to, whatever police resources are there that they've chosen to have there, must diligently pursue the traffic part. How far into the stop did they find that they were probably armed? Did they get that signal? That was before he stopped writing the tickets, Your Honor. But again, in this case, if you'd like me to talk about reasonable suspicion, this is not a holding that Judge Payne made, and there was no reasonable suspicion in this case. They had the alerts. But other than that, the driver had gotten out of the car but had immediately gotten back in the car when told to. So this is not flight. No, I'm thinking that, well, yeah, the driver had gotten back. And my client, Mr. Hill, never left the car, was cooperative, did as he was told, was known to have a prior record, but most of Mr. Hill's interactions with the police had been as a victim. And the red brief, I'm sorry, if I could just finish this sentence, I see I've got my red light. The red brief says that Mr. Hill had been known to associate with robbers. That's actually an error. If you look at the JA, I can find this site in a minute, it's actually the driver who had been known to associate. Mr. Hill had no known associations like that. And so in this case, there is no reasonable suspicion, and again, Judge Payne didn't know that there was. I'd like to reserve the rest of my time for rebuttal, if I may. Of course. Thank you, Your Honor. Good morning. Stephan Anthony for the government. May it please the court. The facts of this case show, and the defendant actually seems to agree in his required brief, that Officer Taylor's actions were a permissible part of the traffic stop, which reduces the defendant's argument then to a question of whether two officers trying to simultaneously write traffic summonses is required by Rodriguez and DiGiovanni to make this case fall outside of a Fourth Amendment violation. And it's clear to you that Rodriguez applies to a 2014 traffic stop? Judge, what we have argued, or excuse me, what we have implicated in our brief is that the officers in this case were still operating under the auspices of DiGiovanni, in which case a de minimis extension of a traffic stop would not violate the Fourth Amendment. You didn't raise that argument below though, did you? We did not, Judge. So why should we even consider it here now? We think, Judge, with the record that's before the court, and the law as it is, that the court can use the good faith exception to apply to this case, even if we did not raise it below. And we cite a case for that premise. Could you briefly explain why? Because I noticed you did not raise it, and I was curious about that. Why we did not raise the good faith exception? Why we can rely on that argument that you did not appear to raise? Judge, because we believe that the record establishes it, even though we did not raise it below. And the case we cite in the latter part of our brief suggests that whatever the record can- That you can affirm on any grounds appearing in the record, is that the argument that you're making? That's correct, Judge. With respect to Rodriguez specifically, as applying to this case, taking away the question of whether good faith will apply, what we have here is an officer, or two officers rather, who make a traffic stop. They get information from the driver and the passenger. One of those officers goes back to the vehicle, and in fact diligently pursues the purposes of the traffic stop. What does he do? He does what Rodriguez tells him he can do. He can run a computer check. He can check the driver's license of the driver. And then he can proceed to write traffic summonses or tickets as required. The other officer in this case, Officer McClendon, simply stayed at the vehicle with the two suspects and engaged in conversation with them, while Officer Taylor completed the incidence of the traffic stop. It seems to be the defendant's argument that this could have been conducted more quickly. I think that's in a nutshell. And isn't that the problem, really, that the Supreme Court's decision in Rodriguez brings up? Because you've got the prospect of police officers slow walking the whole process. And, you know, when I first picked up this case, I thought, is this a slow walk case? Because Rodriguez has said, after the traffic stop is over, you can't extend it. So the only way to nudge that holding, if you will, from an investigatory standpoint, from a police perspective, is to slow walk. And so did slow walking occur in this case? How do we handle that concept in terms of the development of the law post-Rodriguez? Well, I would say two things, perhaps three things to that, Judge. First of all, no, slow walking did not occur in this case. And that's why it's important to also analyze the standard of review here. What we have here is what reduces to a factual argument that the defendant is saying there is some fact which shows this traffic stop was longer than necessary to complete the purpose of the traffic stop. And there simply is no fact alluding to that. Again, going back to the defendant's own brief, his reply brief, he says that Officer Taylor did everything that he was allowed to do. What they tried to inject, though, is some idea that this court can speculate about whether Officer McClendon's inclusion in writing traffic summonses would have, in fact, shortened the period of time. And, again, there's simply no fact to support that. Other than this case, has any judge on this court or anywhere else in the Eastern District of Virginia said an officer can use this thing called pistol? Judge, what I think the Supreme Court has said and what this court has said is there are certain things that officers can do in the ordinary course of a traffic stop. And one of those things is run a computer check. Is there any limit to the number of so-called computer checks that an officer is permitted to engage? Because one can easily imagine, I think, with reduced costs, you could have really countless computer checks. You can check Facebook. You can check all kinds of social media for the person. There's just limitless checks that can be done. And so I'm just curious to know whether you think there's any limit to the so-called collection of information about the operator of a motor vehicle. And, Judge, this is the next point I was going to go into in response to Judge Keenan's question, which is what we have here is a NCIC check, which is for warrants. We have a DMV check, which is for the operability, excuse me, whether this particular driver can operate the vehicle. But what the record shows is that PISTOL was not just for checking police contacts, but was also for getting the proper identifying information of the driver. So, in other words, the DMV check officially is not trusted because people move around, et cetera, et cetera, et cetera. So what makes PISTOL categorically more trustworthy than the DMV check? And why is PISTOL less trustworthy than the next database that comes along? Why is PISTOL less trustworthy than Facebook? Why would an officer check the Facebook, the possible Facebook page of a motorist? Where's the limiting principle? Well, the limiting principle, Judge, is to have the most accurate information that that officer can have in that period of time to write an accurate traffic summons. And what you would look at if I were going to ask the court to essentially set out a standard here would be, is this particular computer check relevant to the traffic summons being accurate and as a ‑‑ Well, any computer check is going to be relevant if that's the standard. A Facebook check would be relevant. I would disagree with the court's respect. But you also said accurate. Can you just go back and finish? Because I'm not familiar with PISTOL either. What would one get from PISTOL that would be useful, relevant, and accurate? And what the officer testified to, Judge, is that the PISTOL system provides name, social security number, and I believe he also said address. And so what he did in this case is he had a name, Jeremy Taylor, which is somewhat a usual name, a name that may have a number of different returns to it. And he had to scroll through eight or nine names. Which did he have to scroll through? PISTOL. PISTOL. He scrolled through eight or nine names, compared that with what he had from NCIC, the DMV, and the identification that the driver provided him. And once he used those things in collaboration, he determined, yes, I have the right person, yes, I can accurately put the information down on the ticket, and therefore I can go on with writing the summary. I think that's a classic definition of what Judge Keeney just referred to as slow walking. Again, why would you stop at PISTOL? The PISTOL information is going to be, as I understand what PISTOL is, the last most recent contact between the individual and some law enforcement officer or official in the Richmond area? Is that what it amounts to? That's my understanding, Judge. So that information could be six months old. It could be three months old. If the person was just released from an 18-month sentence, it might be two years old. So why is there, again, categorically accurate information in PISTOL that is, as a matter of law, better than the information you get from the DMV record? And it may not be categorically more reliable than any other information. But, again, it's akin to a totality of the circumstances. You're taking all of these identifiers. Well, we don't care about totality of the circumstances with respect to reasonable suspicion. We care about totality of the circumstances and trying to be as accurate as we can that the person who has identified himself or herself has accurately identified himself or herself. We would care about it in both contexts, Judge. The point is that you want to have – The question is, does the Constitution care about it? Well, I think the Constitution – I was trying to use it as an analogy more so than as a rule, Judge. But the point being that you have these three different systems, which are routinely checked. They check them to make sure they can be as accurate as possible. And I think Judge Keenan would appreciate it to some extent that you mentioned – that she mentioned she was an old traffic court judge. So was I. Sometimes. The best judges in America. And sometimes you have – Well, among the best judges in America. Yes, sir. But being an old traffic court prosecutor, sometimes you come in there and an officer will hand up a ticket and then somebody he's never seen before walks up to the podium. And why is that? Because he didn't have accurate information. Maybe he should have checked one more system. And that was the case here, what Officer Taylor was trying to avoid. And I think, in fact, that's something to be commended in cases like this, to be accurate. Not to impose some other duty on these officers to say, well, both of you have to be working diligently at this. Well, here's my problem. When you read the facts, because this is really ultimately a factual, clear-error standard of review, although there is the question of whether the district court here correctly applied the diligent standard that we require. And in light of Rodriguez's clear statement that there's no such thing as a de minimis exception, okay, as I read Judge Payne's oral opinion, he seems to say over and over and over again, this was reasonable. What the officers did was reasonable. And he talks about the average length of a traffic stop. I'm hard-pressed to understand the relevance of that. The fact of the matter is every traffic stop is different. If it's a single officer, it's likely going to take longer than if there are two or three officers. Not necessarily. If there are only two citations or summonses to be completed, it's likely to take longer than if there's only one violation that the officer is going to cite. So I'm not sure of the relevance or the salience of so-called average stops and whether in some holistic fashion, whether what the officer or officers did in any particular case was so-called reasonable. The question is, and I think this is the crux of the case, did the officer diligently pursue the conclusion of the traffic stop, which related only to the motorist, only to the driver, had nothing to do with Mr. Hill, in such a way that well before Hill admitted to possessing the gun, the traffic stop had been unconstitutionally prolonged. Now, as I understand the defense argument here, essentially this traffic stop could have been completed in about, being charitable, 12 or 13 minutes. 12 or 13 minutes. Now, whether that's an average or above average or below average, it seems to me is of really little significance. The probable cause on the gun, as I understand the record, didn't come into existence until sometime after minute 20. Minute 20. So how do you account, if there's no de minimis exception, how do you account for the fact that there was another, depending on how you cut it, slice it and dice it, another five, six, seven minutes when if what I've laid out is correct, and maybe it's not, and maybe even if it's correct, it's rejected as a matter of law, how do you account constitutionally for that additional time beyond what one could have concluded was the conclusion of a diligently pursued traffic stop? Given the total absence of reasonable suspicion for any criminal activity other than the traffic violation. Yes, Your Honor. A couple things in response to the court's questions. First of all, with respect to the average traffic stop even being introduced in this case, what Judge Payne was responding to was the defense argument below that because they had a record of other traffic stops on that evening that were far shorter than this one, that this one exceeded, quote unquote, the average traffic stop. And in fact, that was really the crux of the argument below from the defense. Simply because this one was longer, it must have meant that the officers were, as you say, slow walking. They didn't have any evidence to prove that, but that was the conclusion. And so that's what Judge Payne was responding to. Well, that's also necessarily the basis for any suggestion that this could have been done faster. You have to be basing that on, it's a relative concept, so it has to be considered in the context of some norm. Right. So it necessarily starts, whether you identify it or not, from a normative standard. Well, I would say just in somewhat some disagreement with that, Judge, it's not simply just based on some normative average. It's about what did the officers do. And that's what actually Rodriguez, the language he uses. It's about what did the officers do, not relative to some average. That was exactly my point. The question flowed from the presumption that there was or should have been a norm. Right. And the point is that, or at least I thought the starting point was maybe there shouldn't be such a norm. The idea of such a norm really isn't relevant. And I think that's correct, Judge. It's not about a norm. It's about what did the officers do here. And then going back to Judge Davis's question, why is this a 20-minute stop? Well, Judge Payne, in fact, walked through that throughout his opinion. What he talked about is the first five minutes being the time period in which Officer Taylor went back to his car, put the information into the NCIC and the DMV systems, in which case he was still in the course of getting that information back. What about the early call for the canine? Well, it was in the course of getting that information back, Judge, that Officer Taylor called for the canine. So it was an overlapping time, waiting on information to come back from NCIC and actually making the canine call. Right, but is that evidence of intent? In other words, is that evidence sitting in the record that the way this stop was conducted really was to conduct a criminal investigation? Because they called for the canine when they had no reason to call for the canine at that point? And perhaps I'm being unclear, Judge. What I'm saying is that there was some information that had come back, and I think it's at Joint Appendix 1. What did the officer know at the time he called for the canine? At Joint Appendix 111 is where Officer Taylor talks about him getting some information back from the NCIC system, namely the information about probably armed known narcotics, drugs, and sellers. That prompted him to call the canine, but he was still waiting on information about whether there were outstanding warrants. And he got that information back at the same time that he was calling for the canine. Then another five minutes, Judge Payne accounted for, which was the pistol system, which Officer Taylor talked about having to scroll through eight or nine names. Is pistol a law enforcement system? Who generates pistol? It is a law enforcement system, Judge. Is that in the record? That's okay. Don't take time to answer that. I think I may have a page number here, Judge. Is it maintained by the City of Richmond Police Department? I don't know if it's the police department or some other entity. It might be the state police, but I think it refers, or you can look it up by locality. And I think Joint Appendix 110 and 112 talks about that. If Judge Payne had been pulled over for, which would never happen, of course, because he's a careful driver, would his name be run through pistol? I don't know that. Would yours? Again, I don't know that. Would mine, if I got pulled over when I'm driving out of Richmond here today? I don't know that, but I don't think it would be abnormal or either improper for it to be run through those systems. So anybody can be run through pistol in the discretion of the officer? I believe that's true, Judge. I believe what Rodriguez and the other holdings allow is a computer check. So these other stops that night, that day that the defense tried to use as evidence of prolongation in this case, were those motorists run through pistol? What the officers testified to is they could not recall whether those persons were even given a warning ticket. But in terms of drawing a line, which we have been talking about, it certainly does draw a line between pistol and Facebook, that it is a law enforcement-related tool for whatever purpose. Yes, Your Honor, I was going to come back to that point in expanding on my last answer. But the point was, Judge, a pain allotted five minutes for that pistol system to be run. Why? Where did he get five minutes? That's what the officer testified to. So if pistol was slow that night? It may have been seven. It may have been seven. It may have been ten. Okay, I see. Yes, sir. And then what the officer testified to then is that it takes him about five minutes to write out each summons. He has to go to a green sheet and write out his notes. Again, he has to put all the information into the subject lines to make sure it's accurate. And then he is done. But he was not yet complete with those tickets when he heard his partner yell out, gun. And he stopped and then went to engage. So for the reasons that I've tried to articulate here, Judge, and for the reasons stated by the district court, I think the court should deny the defendant's motion to suppress and affirm the lower court ruling. Thank you, Your Honors. If I could start with the standard of review. Obviously, the facts are a clear error, such as it was 20-ish minutes. Those are a clear error. But I think the standard, did they diligently pursue, is either a question of law or at best a mixed question, which this court would review de novo. I also would like to note that with respect to this good faith argument, as Judge, I think, Keenan noted, was not made below. And the other thing, there are a couple of points I'd like to make. One is that below, the government not only didn't make this argument. If you look at Note 12 and JA44, which is their briefing to the district court, they actually argue that Rodriguez didn't materially change the law. I think that would be an affirmative waiver of a good faith argument, not just making it. Have we ever applied the good faith exception to a warrantless search or seizure? Gant and Belton good faith applied, which is actually a Supreme Court ruling in Davis, other than Gant having overruled Belton. Not in my knowledge, Your Honor. The other thing I would say is that, as we argued, the delay in this case was not de minimis anyway. And so DiGiovanni made this stop illegal well before this stop happened, DiGiovanni's 2011. There's no good faith argument here anyway, because this stop was illegal under DiGiovanni, which was a 15-minute traffic stop that had itself been not diligently pursued. But DiGiovanni, the traffic stop, had concluded and then. So you've got a different dynamic going on. So how do we write an opinion about what's slow walking and what's not? I think, Your Honor, in this case, and I do think that's what this is, Your Honor, to be clear. And so you have a factual basis here for that, which is that Officer Taylor testified that he stopped pursuing the traffic summons in order to engage in this pistol investigation when he already knew what he needed to know about Lawrence and the driver. But that is not – I don't find that to be a satisfactory line to tell a police officer that they cannot engage in a – they can never engage in an additional computerized check of a government-based system. Is that what we would say, that you can never go to pistol, that you can never divide up responsibilities? You're going to have to – I need something a little more concrete than that as guidance. I don't think this Court's opinion needs to be that broad, Your Honor, because. Well, help me be specific then. What specifically shouldn't have gone to pistol? Why? If they needed to go to pistol in this case, McClendon could have done it. Because there was a second officer. They can't divide up responsibilities? They're going to be held accountable to how they decide to allocate tasks? In having two officers present and neither of them was pursuing the traffic-related functions, that is not diligent pursuit. So the Court doesn't have to say, for example, that in a one-officer, one-person situation like DiGiovanni, you couldn't use pistol because that's not at issue here. In this case, you have two officers and nobody is pursuing the traffic stop for, as Judge Davis says, five, six, seven, eight minutes. That is not diligent pursuit. That's all you have to say. It's the same standard that you've already said. With respect to the computer search? That's what takes it out? The ceasing of the writing of the traffic sentence. Then you do have to say you can't do that. That is a line. It would seem to me. Officer McClendon could have done that. So it's not that Officer Taylor couldn't have done it. Okay. So in this case, and this gets back to something else I think that Judge Davis said to my colleague, is that Judge Payne, in his oral ruling, only focused on Officer Taylor. He had completely ignored the existence of a doubling of the police resources easily available. And so Judge Payne committed legal error in applying the diligent pursuit standard to the facts of this case, which, on to an over-review, I think this Court should reverse. And so this sort of general— Identifying a driver isn't traffic-related? I'm sorry? And identifying a driver isn't traffic-related? At that point, Your Honor, factually, the driver had already been identified because they knew him and he had already given them his license, which they had checked through DMV and found him to be suspended. How did they know he had a suspended license if they weren't sure who he was? They already knew exactly who he was. Why weren't they? I'm still having difficulty with this. It seems to me at best a judgment call that we can't say it's impermissible to confirm because we would have to say on these facts that that was impermissible. And, again, Your Honor, I think because they chose to stop the traffic part when they already knew who the driver was, that is the lack of diligent pursuit under— I'm not asking this Court to extend the law. I'm asking it to apply the existing law of DiGiovanni and Guglielmo Ortiz. Well, actually, no, because I'm still looking at the identification piece. I would include—where we differ is that I would include the consummation of the identification piece. And that's, I think, where our non-meeting of the minds might occur. If I may quickly, I just ask the Court to consider that they already knew who he was at that point. That's why they knew he was driving while suspended. My assertion is it's not a common— it's my assertion of discomfort at telling them, and they can go no farther to confirm. I would just say in this case, Your Honor, they didn't have to. And so I think that's also evidence of Judge Keenan's slow walking. So for all these reasons, I thank the Court for the extra time. I'd ask the Court to reverse. Thank you. I've got just one real quick question. Can we take judicial notice of the fact that the Court of Appeals of Virginia has described PISTOL as a computerized system that is maintained by the police department and is accessible to the officers in the field through computers in their car? Is that a common subject for judicial notice or not? I don't think that would be judicial notice, Your Honor. I obviously think you can recognize the precedent of the Virginia court system, but judicial notice is facts that are broadly and commonly known and not subject to any kind of dispute, like the weather or the date or the time. So you're saying it is not a proper subject. No, I think it's precedent, but I don't think it's judicial notice for an undisputed fact. Okay. Thank you. Thank you, Your Honors. Thank you very much. We'll come down and agree counsel and proceed directly to the next case. Thank you.
judges: Allyson K. Duncan, Barbara Milano Keenan, Andre M. Davis